# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

SHANNON HARRIS,                      :
                                     :
    Petitioner,  :
                                     :
 v.                             :  Civ. Act. No. 18-273-LPS
                                     :
ROBERT MAY, Warden, and             :
ATTORNEY GENERAL OF THE             :
STATE OF DELAWARE,                  :
                                     :
    Respondents.[1]  :

---

## <u>MEMORANDUM OPINION</u>

Shannon Harris. *Pro so* Petitioner.

Sean Lugg, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

April 12, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I.    INTRODUCTION

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2254 and a second Petition (hereinafter, collectively referred to as "Petition") filed by Petitioner

Shannon Harris ("Petitioner"). (D.I. 1; D.I. 7)  The State filed an Answer in Opposition, to which

Petitioner filed a Reply. (D.I. 14; D.I. 18)  For the reasons discussed, the Court will dismiss the

Petition.

## II.    BACKGROUND

As set forth by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading to

Petitioner's arrest and conviction are as follows:

> The State's first witness, Oliver Cephas, testified that on August 17, 2005 at approximately 1:00 a.m., he was walking in Rosegate, a residential area of New Castle, when he was accosted by two men, one with a gun.  The man with the gun ordered Cephas to get on the ground and empty his pockets.  Cephas handed over a cell phone. The man with the gun took the phone, threw it on the ground, and ordered Cephas to get up and walk to a nearby residence.  When the man with the gun began kicking the front door of the residence, Cephas ran and hid behind a nearby parked car.  Moments later, Cephas heard gunshots and was nearly struck by gunfire as the two men who had accosted him fled the scene.  Cephas could not identify his assailants at trial.

> Another witness for the State, Donald Gordy, testified that at approximately 1:00 a.m. on August 17, 2005, he was heading south on New Castle Avenue when his car broke down.  Gordy pulled into Rosegate, where the light was better, to work on his car.  As he was working on his car, Gordy noticed two men walk past him.  Moments later, Gordy heard gunshots and saw the same two men run back past him.  Gordy testified that the shorter of the two men was wearing a white tee shirt and had a gun.  Gordy could not identify the men at trial.

> A third witness for the State, Darrell Little, testified that between 1:30 and 2:00 a.m. on August 17, 2005, he was looking out of the front doorway of his home in Rosegate when he saw his cousin, Cephas,

walking down the street. Little struck up a conversation with Cephas. As the two men were chatting, Little saw a person suddenly appear next to Cephas and then Cephas drop to the ground. Little also noticed another person in the bushes by his patio. Alarmed, Little shut the front door and was heading toward his backyard to get his dog when the front door was kicked open. From his backyard, Little heard a total of eight or nine gunshots. Little could not identify the person or persons who attempted the break-in.

As part of the investigation into the events of August 17, 2005, the police recovered a .380 handgun, live ammunition, and a spent .380 shell casing from the front room of Little's home. Little denied exchanging gunfire with the assailants.

Several police officers in the Rosegate area heard the gunshots and immediately responded to the scene. One of the responding officers, Detective Edward J. Sebastianelli, testified that as he was driving south on Route 9, he saw two black males, both with handguns, running from Rosegate toward a tan minivan parked on the shoulder of Route 9. One man, dressed in dark clothing, went around the front of the van and out of sight. The other man, dressed in a light-colored tee shirt, got in the van and pulled off, making a right turn into a development. Det. Sebastianelli followed the van to the end of the street where the van stopped. From his police car, Det. Sebastianelli watched as the man in the light-colored tee shirt got out of the van and jogged into a wooded area. Later that day, Det. Sebastianelli located the man in the light-colored tee shirt at Christiana Hospital, where the man was being treated for a gunshot wound. The man was identified as [Petitioner].

Officer Christopher Sarnecky testified that at approximately 4:30 p.m. on August 17, 2005, he retrieved a nine-millimeter handgun from the backyard of a New Castle residence after a citizen, Melody King Thomas, called to report that her child had found the gun in a grassy area behind her house. At trial, a forensic analyst testified that blood on the gun was found to match [Petitioner's], and a firearms and toolmarks examiner testified that seven of the thirteen shell casings recovered at the scene of the robbery/break-in were determined to have been fired from the gun.

On the second day of trial, [Petitioner's] defense counsel sought to introduce the results of a preliminary gunshot residue ("PGSR") test that was performed on [Petitioner] when he was taken into custody on August 17, 2005. The State objected to the proffered evidence on the basis that the police had, in the interim, stopped using the PGSR test

after determining that the test was unreliable.  The Superior Court ruled that, before moving the test results into evidence, defense counsel would have to lay a foundation that the PGSR test was reliable.

In an attempt to lay the foundation for the reliability of the PGSR test, defense counsel conducted a voir dire of Detective Anthony Dinardo of the New Castle County Police Evidence Detection Unit. Det. Dinardo testified that the New Castle County Police had discontinued using the PGSR test, also called an "instant-shooter test," because the test had "been shown to be fairly unreliable – false positives, false negatives, whatever."  Based on Det. Dinardo's testimony, the Superior Court ruled that defense counsel had not laid a sufficient foundation for the reliability of the PGSR test and did not admit the test results.

*   *   *

On August 17, 2005, the police arrested Roderick Butler and [Petitioner] in connection with a robbery early that morning in New Castle, Delaware.  In the indictment that followed, [Petitioner] and Butler were charged with Robbery in the First Degree, Attempted Burglary in the First Degree, Reckless Endangering in the First Degree, Criminal Mischief, and several weapon offenses.  In February 2007, [Petitioner] and Butler were jointly tried before a Superior Court jury.

[Petitioner] and Butler attended only the first two days of the three-day trial.  Midway through the third day of trial and before the jury rendered its verdict, both men voluntarily left the courthouse and did not return. [Petitioner] was convicted *in absentia* of Attempted Burglary in the First Degree, Reckless Endangering in the First Degree, Criminal Mischief, and three weapon offenses and was acquitted of the remaining counts in the indictment.  Butler was convicted *in absentia* of one weapon offense and was otherwise acquitted.

Butler was apprehended in March 2007 and was sentenced in August 2008.  On direct appeal, the Court affirmed the Superior Court judgment.  [Petitioner] was apprehended in April 2013 and was sentenced in November 2013 to a total of twenty-nine years at Level V, suspended after twenty-one years, for Level III probation.

*Harris v. State*, 99 A.3d 227 (Table), 2014 WL 3888254, at *1-*3 (Del. Aug. 7, 2014).  On August 7, 2014, the Delaware Supreme Court affirmed Petitioner's convictions and sentence.  *Id.* at *5.

3

On March 6, 2015, Petitioner filed in the Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 15-13) The Superior Court appointed counsel to represent Petitioner in the Rule 61 proceeding, who filed a Rule 26(c) motion to withdraw and an accompanying memorandum of law. (D.I. 15-14) On April 13, 2017, the Superior Court granted the motion to withdraw and denied the Rule 61 motion. (D.I. 15-21) The Delaware Supreme Court affirmed that decision on January 19, 2018. *See Harris v. State*, 2018 WL 497257, at *1 (Del. Aug. 16, 2017).

## III.   GOVERNING LEGAL PRINCIPLES

### A.   Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see also*

*Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter,* 562 U.S. 86, 98

6

(2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.   DISCUSSION

The Petition asserts the following five grounds for relief: (1) Petitioner was denied his right to testify at trial; (2) defense counsel and appellate counsel provided ineffective assistance; (3) prosecutorial misconduct; (4) the Delaware Supreme Court misapplied the law; and (5) the Delaware Supreme Court erred by failing to reverse the Superior Court's exclusion of preliminary gunshot residue ("PGSR") evidence.

### A.   Claim One: Denial of the Right to Testify

In Claim One, Petitioner contends that the trial court did not let him testify on his own behalf. Petitioner presented this argument in his Rule 61 motion, and the Superior Court denied it as procedurally defaulted under Rule 61(i)(3) because Petitioner did not raise the issue during trial or on direct appeal, and he failed to demonstrate cause or prejudice to excuse that default. (D.I. 15-21 at 26-27)

7

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984), that its decision rested on state law grounds. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule effectuating a procedural default. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998). Therefore, the Court cannot review the merits of Claim Oner absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner does not assert any cause for his default. Although the absence of cause obviates the need to address the issue of prejudice, the Court concludes that Petitioner also cannot demonstrate actual prejudice to excuse his default. A criminal defendant has both the right to testify on his own behalf and the right to refuse to testify. *See Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987); *Harris v. New York*, 401 U.S. 222, 225 (1971). "A court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived that right voluntarily." *United States v. Lall*, ___ F. App'x ___, 2021 WL 1103541, at *2 (3d Cir. Mar. 23, 2021); *see also Hartsfield v. Dorethy*, 949 F.3d 307, 316 (7th Cir. 2020). Nevertheless, here the trial court conducted a colloquy with Petitioner to ascertain his understanding of his right to testify and his waiver of the right to testify. During the colloquy, defense counsel informed the trial court that he had discussed the issue with Petitioner at length and that Petitioner chose not to take the stand. Significantly, during that colloquy, Petitioner did not affirmatively state that he wanted to testify. Given these circumstances, Petitioner has not demonstrated prejudice.[2]

---

[2]The Court does not agree with the State that the Superior Court considered Claim One on the merits. (D.I. 14 at 11) This disagreement does not alter the outcome of the Court's analysis of Claim One. In considering the prejudice prong of the cause-and-prejudice standard applied to Petitioner's procedural default, this Court has essentially considered the merits of Petitioner's claim.

Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One as procedurally barred from habeas review.

### B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that both trial and appellate counsel provided ineffective assistance. The Superior Court denied Petitioner's ineffective assistance allegations as meritless, and the Delaware Supreme Court affirmed that decision "on the basis of and for the reasons stated in" the Superior Court's Order. Therefore, Claim Two will not warrant relief unless the Superior Court's[3] decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of

---

[3] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (federal habeas law employs "look through" presumption that assumes later unexplained order upholding lower court's reasoned judgment rests upon same grounds as lower court judgment). In this case, the Court will "look through" the Delaware Supreme Court's summary affirmance to the Superior Court's decision.

counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock,* 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson,* 712 F.3d 837, 846 (3d Cir. 2013). Here, the Superior Court decision was not contrary to *Strickland* because it correctly identified the *Strickland* standard applicable to Claim Two. *See Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's decision with respect to Petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Richter,* 562 U.S. at 105.[4] The

---

[4]As explained by the *Richter* Court,

relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Trial counsel's alleged ineffective assistance

Petitioner contends that trial counsel provided ineffective assistance by failing to "make any objection during trial." (D.I. 7 at 30) He asserts that trial counsel should have made the following specific objections to the evidence during trial: (a) objection to the State's failure to call Melody King Thomas as a witness to authenticate the gun (D.I. 1-1 at 27-29; D.I. 7 at 30); (b) objection to Officer Sarnecky's testimony on the basis that his recitation of Ms. Thomas' phone call reporting the location of the gun constituted hearsay (D.I. 1-1 at 27; D.I. 7 at 31); (c) objection to Ms. Wallman's analysis and theories regarding the DNA evidence on the basis that there was "no presence of human blood" (D.I. 1-1 at 30; D.I. 7 at 32); and (d) objection that the State failed "to send the GSR result to lab for final testing" (D.I. 7 at 33; D.I. 1-1 at 30).

---

[t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

562 U.S. at 105 (internal citations omitted).

11

In its decision denying Claim Two, the Superior Court thoroughly reviewed the state court record and recounted numerous instances demonstrating trial counsel's active participation in the case and effective representation of Petitioner (D.I. 15-21 at 17-21), ultimately concluding:

> Trial Counsel's decisions were part of his trial strategy, and [Petitioner's] voluntary absence from the State for many years prevented discovering whether certain independent forensic testing and evidence would have been fruitful. [Petitioner's] claims are factually unsupported, vague and conclusory. [Petitioner] has not shown that Trial Counsel's performance fell below reasonable standards or that there was prejudice.

(D.I. 15-21 at 22-23)

In reaching this conclusion, the Superior Court also considered post-conviction counsel's determination in the memorandum supporting his motion to withdraw that Petitioner did not present "any meritorious claims of ineffective assistance of counsel," including post-conviction counsel's determination "that Trial Counsel should have conducted independent ballistics testing to possibly refute the State's case that the gun that was recovered from a backyard near the scene (which had [Petitioner's] blood on it) matched several of the shell casings found at the scene." (D.I. 15-21 at 21)  The Superior Court acknowledged that, after identifying the absence of independent ballistics testing as a possible failure on trial counsel's part, post-conviction counsel stated he "could not ethically allege ineffective assistance of counsel because the gun is no longer available to be tested." (D.I. 15-21 at 21)  The Superior Court agreed with post-conviction counsel's assessment regarding the inability to establish that trial counsel provided ineffective assistance by failing to obtain independent ballistics testing, stating

> such an argument would be speculative without proof that independent testing would have been exculpatory. Here, [Petitioner], by absenting himself from the State of Delaware for more than seven years, caused the delay which ultimately rendered the evidence unavailable. Indeed, [Petitioner] told the sentencing Court that he

12

>   absconded because he intended to "hold up the process . . . he wasn't
>   trying to just flee completely."

(D.I. 15-21 at 21)

In this proceeding, Petitioner re-asserts the same complaints about trial counsel's failure to make certain objections in the same vague and conclusory manner he utilized in his Rule 61 motion. The objections Petitioner believes trial counsel should have raised rest on his perception that the trial court's evidentiary rulings were incorrect. However, the Supreme Court has repeatedly held that a federal court on habeas review is bound by a state court's interpretation of state law, and the Court defers to the Delaware Supreme Court's holding on direct appeal that the evidence/testimony challenged in this proceeding was properly admitted under Delaware law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, trial counsel's failure to make meritless objections did not fall below an objective standard of reasonableness. *See United States v. Sander*, 165 F.3d 248, 253 (3d Cir. 1999).

In turn, any prejudice resulting from the alleged errors identified by Petitioner is speculative when considered in connection with the evidence that was presented at trial. The testimony and evidence provided by police witnesses and forensic science witnesses established that Petitioner was present at the scene. Petitioner had been shot and bled, and his blood was on the gun that was found in an area where he was seen running through the woods. The gun recovered matched multiple casings found at the shooting scene. Given these circumstances, the Court concludes that the Superior Court reasonably applied *Strickland* in denying Petitioner's allegations regarding trial counsel's performance.

13

### 2. Appellate counsel's alleged ineffective assistance

During Petitioner's appeal, appellate counsel filed a Rule 26(c) non-merit brief indicating that appellate counsel had determined there were no meritorious claims to be raised on direct appeal. Included in this brief was a 19-page memo from Petitioner presenting several issues on appeal. The Delaware Supreme Court addressed each of the issues raised by Petitioner in its opinion affirming Petitioner's conviction.

In this proceeding, Petitioner argues that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting Petitioner's conviction, and also for failing to argue that Petitioner's speedy trial rights were violated. (D.I. 1-1 at 15-26; *see also* D.I. 7) Petitioner presented these arguments to the Superior Court in his Rule 61 motion. Although the Superior Court acknowledged the instant two arguments, it did not address them in its denial of Petitioner's Rule 61 motion. Petitioner presented the same ineffective assistance of appellate counsel claims on post-conviction appeal, yet the Delaware Supreme Court also did not address the arguments. In these circumstances, the Court must review Petitioner's claims regarding appellate counsel's performance *de novo*.

### a. Failure to challenge the sufficiency of the evidence

Petitioner, and his co-defendant, Butler, robbed Oliver Cephas at gunpoint around 1:00 a.m. (D.I. 14 at 17) After forcing Cephas to empty his pockets, they ordered him to walk to a nearby residence, where Petitioner and Butler then began kicking the door of Darrell Little's home. (*Id.*) As Little ran to the back of his home, Petitioner and Butler kicked open the front door and discharged firearms. (*Id.*) They then fled. Investigators recovered a firearm from the backyard of a nearby residence. Petitioner's blood was found on the gun and a firearms and toolmarks examiner testified that "seven of the thirteen shell casings recovered at the scene of the robbery/break-in were

14

determined to have been fired from the gun." (*Id.*)  Petitioner vaguely alleges that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions.

The United States Supreme Court precedent governing insufficient evidence claims is *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.  It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

Contrary to his contention, the evidence offered at trial, taken in the light most favorable to the prosecution, established each of the elements of the crimes Petitioner now challenges.  First, as to attempted first degree burglary, Petitioner fails to recognize the legal distinction between an attempted act and a completed act.  He mistakenly contends that the crime was not completed because neither he nor Butler entered Little's residence.  However, their actions – kicking in the front door and discharging a firearm while seeking to acquire property at night – constitute a "substantial step in a course of conduct planned to culminate in the commission of" burglary. *See* 11 Del. Code § 531.  In turn, discharging a firearm toward another constitutes reckless endangering, and the resulting damage caused by the discharged rounds constitutes criminal mischief.  Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found Petitioner guilty beyond a reasonable doubt.  Thus, appellate counsel's decision not to appeal

15

Petitioner's conviction based on the sufficiency of the evidence did not fall below an objective standard of reasonableness.

### b.  Failure to raise speedy trial violation

Petitioner next contends that appellate counsel provided ineffective assistance by failing to argue on appeal that Petitioner's speedy trial rights were violated.  Petitioner attended the first two days of his 2007 trial.  Then, prior to the jury rendering its verdict, Petitioner "left the courthouse and did not return." *Harris*, 2014 WL 388254, at *1.  He was convicted *in absentia*, apprehended over six years later, and sentenced in November 2013.  *Id.*  After his apprehension and before his sentencing, Petitioner sought dismissal of the indictment against him.  The Superior Court denied his motion.

In Delaware, a defendant has a right to speedy sentencing.  *See Harris v. State*, 956 A.2d 1273, 1275 (Del. 2008) (noting there is no United States Supreme Court precedent concerning whether Sixth Amendment right to speedy trial encompasses right to speedy sentencing).  When assessing an alleged infringement of a defendant's right to speedy sentencing, Delaware courts consider the "four *Barker* factors"[5] – length of delay, reason for delay, defendant's assertion of his right, and prejudice to defendant from the delay.  *See Harris*, 956 A.2d at 1275-76.  However, "alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process.  Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately." *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986).

Viewing  appellate counsel's decision not to pursue the speedy trial claim on appeal within this legal framework, the Court concludes that the decision did not fall below an objective standard

---

[5]*Barker v. Wingo*, 407 U.S 514, 530 (1972).

16

of reasonableness.  Petitioner was found guilty in 2005, and the delay in sentencing until 2013 was

completely attributable to Petitioner's own willful fugitive status.  *See United States v. Jackson*, 360 F.

App'x 368, 373 (3d Cir. Jan. 12, 2010) (where defendant was either free on bail or fugitive for

significant portion of delay in sentencing, such delay did not affect defendant's substantial rights or

constitute miscarriage of justice).  Notably, he was apprehended in April 2013 and sentenced by

November 2013.  *See Harris*, 2014 WL 3888254, at *1.  Therefore, the Court will deny as meritless

Petitioner's allegation that appellate counsel provided ineffective assistance.

### C.  Claim Three: Prosecutorial Misconduct

Next, Petitioner contends that the State engaged in prosecutorial misconduct by failing to

call a witness (Thomas) mentioned in the State's opening statement.  Petitioner raised this argument

on direct appeal, and the Delaware Supreme Court denied it as meritless.  Specifically, the Delaware

Supreme Court opined:

> In this case, assuming that the prosecutor erred when he did not call
> Ms. Thomas as a witness after telling the jury in his opening statement
> that they would meet and hear from her, we conclude that the error
> was not "so clearly prejudicial to substantial rights as to jeopardize the
> fairness and integrity of the trial process."  Because Officer Sarnecky
> testified about where he found the gun, it seems probable that the
> prosecutor came to believe that Thomas' testimony regarding her
> discovery of the gun added little to justify the additional trial time.
> Moreover, precisely because Thomas' additional testimony would have
> been largely cumulative, the failure of her to testify presented no
> substantial prejudice to [Petitioner].

*Harris*, 2014 WL 3888254, at *4.  Since the Delaware Supreme Court's adjudicated Petitioner's

prosecutorial misconduct claim, he will only be entitled to habeas relief if the Delaware Supreme

Court's decision was either contrary to, or an unreasonable application of, clearly established law.

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the

prosecutor's actions must have "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986). A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In the Third Circuit, this inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant" *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001).

Here, although the Delaware Supreme Court did not cite federal constitutional law in its analysis of Petitioner's prosecutorial misconduct claim, its focus on whether the State's conduct adversely affected the integrity of the judicial process mirrors the inquiry required by *Donnelly* and its progeny. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Delaware Supreme Court's decision also did not involve an unreasonable application of clearly established federal law. The Delaware Supreme Court properly examined the State's failure to call Thomas to testify in the context of the entire trial, and held that the error – assuming it was an error – was not so clearly prejudicial that it jeopardized the fairness and integrity of Petitioner's trial. The Delaware Supreme Court specifically noted that, "precisely because Thomas' additional testimony would have been largely cumulative, the failure of her to testify presented no substantial prejudice to" Petitioner. *Harris*, 2014 WL 3888254, at *4. Therefore, the Court will deny Claim Three because it fails to satisfy § 2254(d).

18

### D. Claim Four: Appellate Counsel's Withdrawal Violated Petitioner's Sixth Amendment Right to Counsel

Petitioner's appellate counsel filed a brief and motion to withdraw under Delaware Supreme Court Rule 26(c), asserting there were no arguably appealable issues.  Appellate counsel included all of Petitioner's points for consideration.  The State responded to Petitioner's points, and the Delaware Supreme Court addressed and rejected each of Petitioner's points.

In Claim Four, Petitioner asserts that "the Delaware Supreme Court commit[ted] a prejudic[ial] error by granting appellate counsel's 26(c) motion to withdraw as counsel. . . . .  This error prejudiced and deprived Petitioner of a fair review and effective assistance of appellate counsel."  (D.I. 7 at 5)

Whether construed as alleging ineffective assistance of appellate counsel for filing a Rule 26(c) non-merit appellate brief and motion to withdraw, or as challenging the sufficiency of the appellate process, the Court concludes that Claim Four fails to warrant relief.  First, since Petitioner did not present either construction of Claim Four to the Delaware Supreme Court, the arguments are unexhausted.  At this point, Petitioner would be barred by Superior Court Criminal Rule 61(i)(1) from presenting Claim Four in a new Rule 61 motion, meaning that the Claim is procedurally defaulted.  Petitioner does not allege cause or prejudice, or provide new reliable evidence of his actual innocence.  Therefore, the Court will deny Claim Four as procedurally barred from federal habeas review.

Second, even if Claim Four should not be viewed as procedurally barred, the Court alternatively denies it as meritless.  An attorney's decision about which issues to raise on appeal is strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 272 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983).  Recognizing that an

19

attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," the Supreme Court has held that an attorney may withdraw from representing a client on appeal, so long as the attorney follows a procedure that "affords adequate and effective appellate review to [the] indigent defendant[ ]" and, therefore, "reasonably ensures that an indigent appeal will be resolved in a way that is related to the merit of that appeal." *Smith*, 528 U.S. at 272, 276-77.

In *Anders v. California*, 386 U.S. 738 (1967), the United States Supreme Court articulated a procedure designed to protect an indigent appellant's constitutional rights when his attorney moves to withdraw. Pursuant to *Anders*, appellate counsel must conduct a "conscientious examination" of the case before seeking to withdraw from the case, and then file an appellate brief "referring to anything in the record that might arguably support the appeal." *Id.* at 744. The defendant must be given a copy of counsel's brief and given an opportunity to raise any points he wishes. *Id.* Then, the appellate court must conduct a "full examination of all the proceedings to decide whether the case is wholly frivolous." *Id.* "If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Id.* at 741-42; *see also McCoy v. Ct. App. of Wisconsin, Dist. 1*, 486 U.S. 429, 442 (1988). In Delaware, motions to withdraw from representing an appellant are governed by Delaware Supreme Court Rule 26(c) which, in turn, is modeled on the procedure set forth in *Anders*. *See* Del. Sup. Ct. R. 26, Committee Comment.

The record in Petitioner's case reveals that appellate counsel followed the proper procedure for withdrawal under Rule 26 and, therefore, he also followed the proper withdrawal procedure articulated in *Anders*. For example, appellate counsel thoroughly reviewed the record and determined that there were no meritorious appellate claims. Counsel then advised Petitioner of that finding, and timely filed a Rule 26(c) non-merit appellate brief on Petitioner's behalf that included

20

the claims Petitioner wished to raise. Finally, the Delaware Supreme Court conducted its own independent review of the record, determined that counsel made a conscientious examination of the record before moving to withdraw, and concluded that Petitioner's appeal was "wholly without merit and devoid of any arguably appealable issue." *Harris*, 2014 WL 3888254, at *5. Given these circumstances, the Court concludes that appellate counsel did not provide ineffective assistance by filing a Rule 26(c) non-merit appellate brief and a motion to withdraw.

These circumstances also lead the Court to conclude that Petitioner's contention regarding the sufficiency of the appellate process lacks merit. The Delaware Supreme Court addressed and rejected each of Petitioner's points, and properly applied *Anders* when it concluded that Petitioner's appeal was wholly without merit. Accordingly, the Court will alternatively deny Claim Four as meritless.

### E. Claim Five: Failure to Admit Evidence

In his final Claim, Petitioner argues that the Delaware Supreme Court erred in failing to reverse the Superior Court's exclusion of the preliminary gunshot residue ("PGSR") test evidence because the exclusion denied Petitioner a fair and just trial.

As a general rule, state court evidentiary rulings are not cognizable on federal habeas review unless the petitioner shows the admission of evidence caused a fundamental unfairness at trial in violation of his due process rights. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Claim Five asserts an error of Delaware law, and Petitioner has failed to demonstrate any related deprivation of a due process right. Therefore, the Court will deny Petitioner's challenge to the Superior Court's evidentiary ruling for failing to assert an issue cognizable on federal habeas review.

21

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.

22